Good morning, your honors. Lori Tyker on behalf of Petitioner Appellant Johnny Hamilton. I'll attempt to reserve two minutes for rebuttal. Johnny Hamilton, due to his trial lawyer's failure to file his notice of appeal, never got a chance to challenge the life sentence that he received for possession of a single rock of cocaine. The District Defense Counsel has a duty to file a notice of appeal or to consult with Mr. Hamilton regarding his right to a direct appeal. In this case, counsel did neither. What do we make of the factual finding that went against your client on that? Your honor, in terms of the factual finding, obviously this court has a level of deference that is due to that finding that happened at an evidentiary hearing in the state court. But Mr. Hamilton's argument is that this is an unreasonable determination of the facts under Taylor v. Maddox and that the factual finding is not entitled to deference in state court if there wasn't a clear understanding of the constitutional law at issue here, Roe v. Flores-Ortega. What you have here is under Flores-Ortega, consult means advising the defendant of the advantages and the disadvantages of the appeal and making a reasonable effort to discover the defendant's wishes. And quite frankly, we can't have a situation where the state court here is snow blinded by defense counsel saying that it was a tactical decision, that he had some kind of a conversation with Mr. Hamilton, and Mr. Hamilton said, I want post-conviction, and therefore counsel's duty is discharged at that point. It has to be reasonable. It has to be reasonable. And in this case, you have a situation where he went to trial. Mr. Hamilton went to trial, and he was represented by counsel, and he received life on a simple possession case of one rock. But you're basically asking us to reverse the factual finding of the state court, which said that, in fact, the client, the attorney did consult with the client, and the client opted for post-conviction relief as opposed to direct appeal. Now, the state court made that finding. Why do you think that's we need to set that aside? We have to. Your Honor, I don't believe that it's entitled to deference because under Flores-Ortega, it has to be reasonable. And the consultation has to go further. It has to go further than some comment that Mr. Hamilton says, I want post-conviction. Any lawyer has a duty to go further than that. And there's a Fourth Circuit case that's on point regarding this, Hudson v. Hunt, that defense counsel in the state post-conviction hearing says, well, Mr. Hamilton, he had some exposure and some priors, and he understood the system. It's not rational, and it's not reasonable. And it's not reasonable to say that the duty to consult goes no further than for a defendant who's just been given life in prison on a rock to say, I want post-conviction. What's reasonable is that that lawyer has to go further. That lawyer has to go further and talk to him about that and say, look, here's the difference between direct and post-conviction. I gather your argument. You seem to be making a different argument. But I gather your argument is that we accept the factual findings of the state court as to what happened, but that accepting that factual finding, you don't think it meets the standard. That's far different from saying we have to reject the factual finding. So tell me, which is your position? Either. Well, you're giving me nothing to, no basis to reject the factual findings of the state court. Well, it's an unreasonable determination of the facts. And so under Taylor v. Maddox, I think that you can set those aside and look at it anew, look at it de novo. It's not reasonable based upon those factual findings are not entitled to deference I think, counsel, if I could interject a question. I'm bothered by this. I think the same issue Judge Thomas was raising, that is, I'm assuming right now, subject to further argument, that the state court said he didn't request an appeal and that that part of the factual record isn't something that our court can overturn. So the question I have in my mind is, assuming he did not specifically say I want to appeal, that we accept that factual conclusion. Did the district court properly follow the standards in that Justice O'Connor opinion for us? Or is there something more?  Are there circumstances where the court asked that they take appeal to be effective even though it wasn't requested? Yes, there are. And did you call the district court's attention to the Flores-Ortega case? Yes. Yes, I did, Your Honor. And I argued in my briefing that the state court's findings were an unreasonable application of Flores-Ortega and an unreasonable application of Strickland in this case in that it doesn't go far enough in terms of what Justice O'Connor talks about in terms of the duty to consult and the reasonable test, the reasonableness test. And the reasonableness test is that a rational defendant would want to appeal. And the findings that the state court made is not reasonable here. There's absolutely no way that getting life on a simple possession case, plus an express wish to challenge the case. He did say, I want to challenge the case. He used the word postconviction. But at that point, that triggers the duty, and that's where I think the state court got it wrong, is that they didn't go further in terms of what that duty to consult means. And that duty to consult means the lawyer sits down when he just went to trial on the case and his client got a ten-to-life sentence that, look, here's how you challenge that sentence. You don't challenge that sentence on postconviction. You can challenge my effectiveness and how I did at trial, but the first step that you need to do is challenge that on direct appeal. And if you don't do that now, you're going to lose that right, and that's exactly the right that Mr. Hamilton lost. In terms of briefly regarding another issue before this Court is the failure of defense counsel to develop and call favorable defense witnesses at trial. Here you have a situation where Mr. Hamilton's, again, it's a possession case. It's a simple drug possession case of one rock. The defense theory at trial was that reasonable doubt existed that as to whether or not Mr. Hamilton possessed that rock that was found some distance from his person when he was apprehended by the police. A big part of that had to do with him running and the situation that went down before he was actually taken into custody by the police officers. Mr. Hamilton's credibility was critical at this point, and the jury got a flight instruction. Also, the officers testified that they rode past Mr. Hamilton at the beginning, and they said hi to him, they exchanged hello, hello, kept on going, and at some point later they called out, hey, Johnny, and that's when Mr. Hamilton ran. Obviously, the jury could, it was possible for the jury to presume from him running that they, that he had a reason to flee. Mr. Hamilton's reason for fleeing was what he'd been telling his defense counsel from the beginning, was I was in a fight, and he promised, the defense counsel, the problem with that is that he promised during the opening that Mr. Hamilton was in a fight with other people, and he was going to show that that's why he ran. It wasn't because he actually had that rock of cocaine. The counsel's failure to call the three witnesses wasn't based on any kind of strategic or justifiable reason. There wasn't a strategic choice when you have a lawyer that hasn't yet obtained facts on which such a decision can be made, and those cases... So the lawyer testified that the witnesses were adverse to your client, and that, in fact, they had criminal records he thought would damage the jury. Why isn't that a strategic choice? That's not a strategic choice because it's not reasonable. There's no other way to get the fight story into evidence based upon Mr. Hamilton's priors at that point, and it didn't matter in terms of them having a criminal record. The testimony wasn't going to be that Mr. Hamilton wasn't a good guy. The testimony was going to be if defense counsel had talked to them, because that's what they said they would have testified to had they even been spoken with, was that they'd had a fight with him, not that he didn't have a good bye, that he wasn't a good guy. In any event, it enhances Mr. Hamilton's credibility in that that's why he ran. He was scared because he'd had a fight with them, and it's a reasonable argument that could have been made in closing. And if putting people with records on the stand doesn't work, then you should ask the State that. They do it all the time, and they manage to get convictions with people having criminal records. It's not a reasonable tactical decision that was made. And with that, I'll reserve. You've got about 30 seconds. Thank you. Good morning. My name is Jared Frost. I'm here representing the respondents. I'm employed by the Nevada Office of the Attorney General. It's good to be with you today and out of the snow for a bit. I'd also like to first address whether Mr. Hamilton's trial counsel was ineffective for failing to file a direct appeal on his behalf. The law here is fairly clear. As Ms. Teicher pointed out, under Roe v. Flores-Ortega, a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner. In this case, there is no credible evidence showing that Mr. Hamilton made such an instruction. As has been pointed out at the evidentiary hearing, the State district court discredited Mr. Hamilton and credited the testimony of his defense counsel, who testified that Mr. Hamilton did not file a notice of appeal. Counsel, if I could interject a question. Certainly. Just to make sure you focus on an issue of concern to me. I'll assume, as the state court found, that there was no request by Hamilton for an appeal. But under Roe v. Flores-Ortega, doesn't that require for effective assistance that in some cases, absent a request, the lawyer has to consult about direct appeal or advise on it? That is correct, Your Honor. Under certain circumstances, that duty does exist. And what I'd like to point out with respect to this aspect of the argument is that this the basis for the argument was ruled to be unexhausted by the United States district court. That ruling can be found on page 17 of the excerpt of record. In addition, Mr. Hamilton abandoned this claim in a formal declaration filed with the same district court. Now, due to an oversight on our part, we did not raise the exhaustion requirement in our answering brief. However. Well, let's sum this appropriately before us. Would you answer that question? Certainly. On the merits. There are basically two circumstances where a defense counsel is required to consult with his client regarding appeal. Were there a rational defendant would have wanted to appeal or were the defendant reasonably demonstrated to counsel an interest in appealing? As I understand, Mr. Hamilton's argument is that there were rational grounds for appealing his conviction. However, what we know from the State evidentiary hearing is that Mr. Hamilton did not request to file an appeal. That there was this conversation in which Mr. Hamilton expressed an interest in a post-conviction action and that there was an informational statement. So why didn't that trigger the duty to consult? A defendant says, I want some post-conviction relief. And what you're basically saying is that the attorney said, well, all right, then I know you understand that State habeas statute is in direct appeal and, therefore, I'm going to assume you're going to waive your right to direct appeal. Is that what your contention is, that we should presume that? I mean, it seems to me, to flesh it out a bit, that that should trigger a duty to further consult. Right. Because, obviously, he wants to do something. He's not saying, I don't want to do anything. He just says post-conviction. So what is there in the record that indicates that the attorney has fulfilled his obligations to consult? Well, again, what this issue was not presented to the State district court, and there was no discussion of this in the evidentiary hearing. What we do know is that there was some conversation in which this post-conviction action was discussed. We also know that there was an informational sheet that defense counsel provided as was his habit and custom to his clients. Now, that informational sheet was not in the defendant's file suggesting that he had been provided with this informational sheet concerning his right to appeal. So what we do know, the inferences of what we know is that there was some conversation suggesting that this duty was met. In addition, we know that counsel was surprised to find out later on that Mr. Hamilton was interested in filing appeals, suggesting that he may have communicated his desire not to appeal, which would have negated the duty to consult. And so under either of those scenarios, Mr. Hamilton's claim should be denied. Well, no, that answers the question about whether he adequately consulted or doesn't. I mean, we're just we don't know what happened. That's correct. Except that we have a client who expresses an interest in some action post-trial, whether it's post-conviction or direct appeal. An attorney who doesn't remember but testifies under his best practice that he gave him the sheet and he would have appealed if it had been requested. And the client who says, well, I asked him to appeal, which was found factually against the client on that, this district court. But that's all we have, isn't it? That's correct. There's we don't have evidence or a basis for determining that. That issue was not presented to the agency. Well, why would a rational defendant not want to appeal a life sentence? Well, a rational defendant would need a rational basis for appealing the conviction. A rational defendant wouldn't act purely out of emotion or a feeling that the conviction was unfair, but would need a basis, a rational basis for appealing. Well, there is no real rational basis in a post-conviction relief for attacking the sentence alone, is there? That had to be done in direct appeal. That's correct. And so by pursuing post-conviction relief in State habeas, he was losing the opportunity to challenge the sentence, true? Correct. And if there are no further questions on that issue, I'd like to speak just for a moment on the issue of whether Mr. Hamilton's counsel's decision not to call three defense witnesses resulted in ineffective assistance of counsel. As has been pointed out, during the trial, Mr. Hamilton's counsel testified that he made the, quote, strategic decision not to call these witnesses because they all had serious criminal histories. They were possibly hostile to Mr. Hamilton. Recall that these were the same individuals who had allegedly attacked him with a billiards cue later, earlier in the evening, and counsel was concerned that their testimony might actually be detrimental to Mr. Hamilton. So it was clear. So how could that be? Well, what I believe the concern was, is that by submitting a case to counsel They obviously didn't like him, but that was his testimony, that they were after him. That's correct. So? I believe it was this association with these individuals who had significant criminal histories would have reflected poorly on Mr. Hamilton, and that was the reason why the defense counsel did not want that particular testimony to come in, be presented to the jury. In addition, these witnesses had no personal knowledge of the circumstances of Mr. Hamilton's arrest. They were not present at the time. Furthermore, in any event, they could not have testified as to what Mr. Hamilton was thinking at that moment or the reason for why he ran from the police when he encountered them on the night of his arrest. And so in closing, I'd just like to reiterate that in this particular case, Mr. Hamilton has the heavy burden to show that the conduct of his counsel, his presumably competent counsel, fell below an objective standard of reasonableness. In addition, that the State court's adjudication of this issue was contrary to or involved in unreasonable application of clearly established Federal law as determined by the United States Supreme Court. The Respondents respectfully submit that Mr. Hamilton has not met this standard, has not overcome the double deference to which the State's court's adjudication is entitled and his claim should be denied. If there are no other questions, that concludes my presentation of the issues. Okay. I have one question. If we were to decide that the Flores case wasn't satisfied in the sense that the lawyer had some greater duty to consult than what he did about direct appeal, if we say the enemies believe it should be granted or would we demand for anything else to be done in the district court? I think in that situation, what would be appropriate would be to have an evidentiary hearing on that issue or grant the plaintiff the right to appeal. I think that would be the appropriate relief in this case. Thank you. Thank you. Briefly, in conclusion, Flores-Otego was not satisfied here. Mr. Hamilton received life in prison on a simple possession case, and he expressed an express wish to challenge that. It's nonsensical to think that he wouldn't have wanted to challenge, and there's no requirement that he can't be emotional regarding the fact that he received a 10-year sentence for a single rock of cocaine. He had a rational basis for appealing that and appealing the imposition of that sentence. The only way for that to be done is on direct appeal. The Nevada State Court's holding is not a reasonable application of Flores-Otego. Counsel, would you mind addressing the exhaustion question? I do note that Judge Perot found that Petitioner Hamilton had not exhausted the question of adequate consultation. How do you deal with that? I believe that it was exhausted, Your Honor. It goes to the way that the issue was raised was whether or not he failed to file a timely notice of appeal. I just, it's nonsensical to me that it wouldn't be exhausted at this point. It was adequately presented to the courts and there was a hearing on it. Let me read to you what, if I, my voice is as bad as you can tell, but here's what Judge Perot says. Petitioner Hamilton also claims that trial counsel should have consulted with him regarding a direct appeal because several potential appellate issues existed. Petitioner Hamilton identified those issues before the State court, the State court's decision might have been different, et cetera, et cetera. However, because Petitioner Hamilton now only identifies those potential appellate issues as an amended petition but didn't do so in a State habeas corpus petition, this aspect of ground three appears to be unexhausted. And I realize the State didn't realize, didn't raise that on appeal, but does that impact your Ortega analysis? No, I don't. I don't think so, because in terms of prejudice, Mr. Hamilton doesn't show under Flores-Otego. He doesn't have to show that he might have prevailed on appeal, just that he probably would have appealed. And had his lawyer asked, and the focus is whether or not he would have appealed, not what the outcome would have been. And so I think that it is adequately exhausted under that ground as well. Okay. Thank you, Katz. Thank you. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Thomas, Gould